At this time, we'll hear United States v. D'Alecandro. Thank you. Morning. May it please the court, good morning. My name is Ray Hassett. I represent the defendant in this case, appellant Frederick D'Alecandro. This case, your honors, is one that is one of a narrowed scope. Basically what we're looking to do is have the underlying decision regarding restitution only overturned in light of the fact that there is non-compliance with the Mandatory Victim Recovery Act of 1996, also known as 18 U.S.C. 366. Would you identify the prejudice that your client sustained, if any, as a result of the delay in imposing restitution? I can, your honor. That will be the second part of the argument, and I will go to that first. I'll go to that first. The prejudice that has been incurred by my client is one in which for five and a half years, he was unaware of the fact that a restitution order of approximately $1 million would be issued against him. He also What would he have done differently? Well, your honor, if there's If that restitution order had been imposed on day X plus 1 after the error? If we look at the PSI, your honor, first of all, he was unemployed for a portion of that. The restitution order would have been less. It's a 20-year judgment that would have reduced down the period of time for him that he would have had obligations to pay. The prejudice is severe in that now he has to work to age 71 if he has to comply and provide contribution to the victim of this. But more importantly, he and his family have suffered tremendous prejudice. And as we know, the courts have said that financial ramifications to the defendant can be considered by this court as prejudiced. For example, he and his wife went out and got a full-time job. He was looking for full-time employment. They were contributing towards their mortgage on their home at that time. They elected Now there's a lien for $1 million five and a half years later in which this restitution award comes out. So the equity has grown. They did everything they could to support themselves and support their children, not file bankruptcy. He tried to pay off all of his debts and work his way through this. This is a man, let's not forget, that was called a model citizen by the sentencing court at the time of sentence. Why do you say he didn't know he was going to have to pay it? And it was said at the sentencing that he was going to have to pay a substantial restitution. And it probably would have been imposed right there and right then, but for the time being, I'll ask for an opportunity to question the PSR, which is perfectly appropriate, but it takes time, doesn't it? Your Honor, it could have been imposed, and my argument is in light of the Dolan case, should have been imposed. There should have been a hearing conducted in conformity with the statute. It should have been conducted within the 90 days. There's no evidence that came out in any of those hearings that was not or could not have been known within that time frame. The Dolan case dealt with something completely different, and it said, listen, on the 90-day provision, we can extend that if we don't know what the damages are. There was nothing that was restricting this Court from determining 5.5 years later. Not 90 days, but 5.5 years later. So would you now, having addressed the prejudice issue, address the appeal waiver? Well, I will, Your Honor. There's more to the prejudice waiver or to the prejudice, Your Honor. Well, I've asked you to address the appeal waiver. Very well, Your Honor. With respect to the waiver of the appeal, Your Honor, I think that the Second Circuit has articulated in two separate cases that are cited in my reply brief, which start on page 2 and go through page 6. U.S. and I'm going to pronounce this, I may pronounce it wrong and I apologize. I believe it's pronounced Ala-Demigi, which starts on page 2, and also U.S. v. Reedy, in which the courts have, this Court has specifically said the legality of a restitution award can be challenged as well as the amount. Here's the perfect example. Do those cases involve specific language in the plea agreement that specifically the waiver provision of the plea agreement that specifically refers to restitution? It refers to the fact that they can always be legally challenged regarding regardless of whether there has been a waiver. It's my understanding of the of the So the language here that apparently exists in plea agreements in Connecticut is that the conviction, the defendant agrees not to appeal or collaterally attack the conviction or sentence imposed by the court. The sentence does not exceed 33 months, a 3-year term of supervisory release. Restitution and a fine. That's correct. The application of restitution, in other words, the theory that restitution has to be ordered, if it's done in conformity with the statute and it's not and there What does those two cases say? They say we agree to it. The Court, during the allocution, Judge Underhill referred in connection with the waiver provision to the fact that your client was waiving his right to appeal restitution in whatever amount is found by the court. Then your case is over in any court. Your Honor, that has to do with the legal imposition of the restitution amount in conformity with 3663 of 18 U.S.C., number one. Number two, there is a basis in those cases, and I encourage the court to review those cases, do allow the court to determine if, for example, he came back with a $1 billion restitution award, I could be in this court today and say, Judge, this is just unreasonable. It's completely outlandish. And that's the example that's provided in my brief and also in the cases that say that there is a legal right for me to come forward here and challenge the amount of the restitution that's provided or required by my client. Your Honor, back to one of the other questions. Why did your client agree or understand that he was waiving his right to appeal any restitution in whatever amount is found by the court? Your Honor, and again, that's not the way I would interpret it nor the way I think the court would interpret it. If it was any amount and it came back as $1 billion, I think the court would ultimately decide that's egregious, that's not within the realm of reality and would be subject to this Court's discretion to overturn that on prejudice to my client. We have a temporal gap here of 5 years and 5 months, right? Correct, Your Honor. Would you just give us, in very brief form, who dropped the ball and why? Your Honor, I'd ask you to look at Exhibit JA-17 of the record. It's the July 15th – it references the July 15th telephone conference between Judge Underhill. And I think it's actually been cited in the government's brief. I'll read it to you. JA-17 is the – it's JA-17 GA-104, but I'll read to you the relevant language. It said, It has recently come to the Court's attention that no restitution order ever issued in the defendant's case. When was that? That was in July of 2015. And then we get a decision 2 years later. Well, I'm trying to figure, without a large moral imputation of moral fault, just who dropped the ball? Your Honor, with all disrespect to the Court, because I have the utmost confidence and faith in the sentencing court, I believe the sentencing court completely dropped the ball. And when we got the decision, especially after seeing the comments that were made about my client, it was just a – What was the gap between the time that Judge Underhill resurfaced and the earlier action or record statement? What was going on here, in short? Just take a quick – or maybe on rebuttal you can just think about that question, come back and tell us. I'm happy to reserve time. Just describe to us what exactly was going on. Thank you. You actually have not reserved time. I didn't, Your Honor, but I – So why don't you answer the question? I can answer it now. Go ahead. From July of 2015, the Court requested a hearing, requested a joint hearing with the other co-defendant, who, by the way, has withdrawn his appeal and has no assets and is not contributing anything. I know that's irrelevant to this Court. But there have been – there was a hearing, there was a joint stipulation that was filed, and then the last hearing was on August 30th of 2011. It was an evidentiary hearing. And then the decision was granted on January 15th of 2006. And why isn't it reasonable to assume that in almost any court, proceedings are propelled by the parties? The judge has a lot of cases and a lot of things to focus on, and you're the one who is standing here today and saying you were prejudiced. So if you were experiencing prejudice, that usually means the Court would look to you to stimulate a decision. I could say, Your Honor, there were calls made to the clerk to determine the status on probably a dozen different cases. Is that on the record? It is not, Your Honor. I can represent that as an officer of the Court. I believe the co-counsel, Mr. Sheldon, can represent it. He called as well. The reality of it is, is the obligation – That would seem to suggest that it was fully anticipated that there would be a restitution order, and the likeliest restitution order would be in the precise amount that it was entered, right to the penny. And that's why it should have been decided in conformity with the statute. It was in the PSI, it was at the plea, it was all the way along – Well, very few people would complain that they have to pay money five years later than five years earlier. Not to the prejudice of somebody that has to work until they're 71 years old, Your Honor. And there is undue prejudice on this gentleman who didn't get a dime. If he stops working, then 10 percent of his income drops, correct? He just pays 10 percent, right? 10 percent or a minimum of $250 per month, I believe, is the order. Okay. And I don't know how that number was determined or why it was determined, especially when you look at the sentencing comments with respect to Mr. Delacondro. And he – it's indicated in the sentencing that he was not – he's not the target, he was not the main person. He was not primarily responsible, according to – I know, but there's nobody else around to pay, is there? Well, that's unfortunate that five and a half years later, we're looking to the guy that tried to help people and provide medical services to people in a convalescent home. We'll hear the government. Thank you. Thank you, Your Honor. Good morning. May it please the Court. I'm David Sheldon, Assistant United States Attorney from the District of Connecticut. On behalf of the appellee, the United States of America, at all times in this case, the defendant knew that he was subject to mandatory restitution. He signed a written plea agreement to that effect. He acknowledged in the agreement that restitution was mandatory. The agreement contained a rider that said that the Court shall order restitution. He stipulated in his offense conduct to the loss to the victim of $956,090, and he waived his right to appeal any sentence that imposed restitution. Is that why the government thought there was no point in bringing to the attention of the Court that years and years are going by without the entry of this order? Because there's something to the argument that as your life progresses, your financial needs and planning change. There's no question that if the government were the party here complaining that we had been prejudiced by the delay, then we would have to answer that. The government doesn't have to be prejudiced by the delay. The government has an interest in the orderly proceeding of criminal cases. Without question, Your Honor. And as my brother counsel said, there were informal inquiries. There's nothing in the record to confirm that. But at all times, we wanted to make sure that the victim got the full measure of restitution. In our mind, that meant that Judge Underhill had to work his way through a very dense history of the proceedings in Bankruptcy Court. If you look at the material that the party submitted to Judge Underhill in response to his request in December of 2010, there's an awful lot there. And we kept hoping that we had sufficiently unwound the record of those proceedings that had nothing to do with the criminal case to show Judge Underhill that the defenses that the defendants were raising, that they were entitled to a set-off because of what happened in the Bankruptcy Court, were just simply not true. I mean, it seems to me that it behooves both sides in connection with restitution to get it over as quickly as possible. The government has got an obligation to victims, and for different reasons, the defendant may want to start paying sooner rather than later. I think that's absolutely right, Judge Loya. And the fact of the matter is the 90-day period, as this Court has consistently said and the Supreme Court said, is designed to serve the interests of the victim. Protect the victims. Correct. Correct. But in this case, and as Dolan teaches and as this Court has repeatedly held, the issue is, did the defendant know that he was subject to restitution? It's eminently clear here that from the date of his plea and all the way through his sentencing, he knew that restitution could be ordered. He knew it when three months after sentencing, within the 90-day period, in October of 2010, Judge Underhill held a hearing. And at that hearing, you can see that Judge Underhill says, I don't have enough facts here. I'm not sure if I can address the setoff argument. I need more facts. I need the parties to file a stipulation of offense conduct. I want you to file that in the next few weeks. That's exactly what happened with Dolan. The Court said within the 90-day period. Am I right that in connection with the cases on which your adversary relies, and none of those cases involve specific language of the sort that appears in this case relating to restitution? That's precisely correct. In all of those cases, the Reddy case, Olatomegi, and Burden, the plea agreement was silent as to the aspect of the sentence that was appealed. There was no mention in Reddy of the issue of restitution. So this Court held, well, then the waiver of appellate rights could not have waived the right to appeal restitution because there was no mention of it in the plea agreement. The same thing in Olatomegi and in Burden. There was no mention of a waiver of the right to contest the supervised release term that was imposed. In this case, there was expressly the right to waive restitution, and the canvas of the defendant during his plea was exemplary. Judge Underhill said, you understand you're waiving your right to appeal restitution in any amount the Court might order. And the defendant said, yes, I do. And Judge Underhill said, well, what if Judge Underhill had imposed a $1 billion amount? There's no question that where you have a fundamental miscarriage of justice, then an appellate waiver would yield, right? If it were completely unforeseen to the defendant, then I don't think that a waiver would be unforeseen. So he pleaded guilty before Dolan was even decided, right? Yes. He pleaded guilty on November 3rd, 2009. But there was clear ---- And that was before Dolan gave us some notion of what the rules might be here. At that sentencing, Judge Underhill told him that restitution would be decided soon, quote, unquote. Yes. Five years. And the law in this circuit prior to Dolan was exactly consistent with Dolan, that the 90-day period was to protect the victim and the defendant could not complain. Yes. But do we have any cases that have approved such a long delay? No. There's no case out there where the delay is ---- continues through a series of hearings, the first one in October of 2010, within the 90-day period, another hearing in August of 2011. That was the final hearing. And then there was additional briefing submitted after that hearing.  Well, after five years, the question seems to me, the threshold question seems to me to be who has the burden of showing what. And I don't understand why, in these circumstances, the burden shouldn't be on the government to bear the burden of showing a lack of prejudice. A lack of prejudice. Yes. Well, in this ---- if that's the case, Judge Cabranes, there's nothing in the record that establishes prejudice.  And you think if there were such a rule, assuming there is such a rule, you've carried that burden? Certainly. Yes. Because as Judge Underhill expressly found in ruling on the defendant's motion to stay the restitution order, he said the defendant's made no showing of prejudice caused by the delay. Boy, that's consistent with Dolan and Gushlak in this circuit that say that any delay inures to the detriment of the victim, not the defendant.  We would agree, however, though, if the defendant were prejudiced by the delay, then restitution could not be imposed. Well, I think the question would be then a weighing of the facts and consequences. Right. Right? Yeah. At this point, consistent with the analysis of Dolan, he knew all along that restitution was going to be imposed. He knew it was mandatory. And all of Judge Underhill's remarks said that to the defendant. And so he knew. He might have had a hope that he wasn't going to be held jointly and separately  But he also knew that the government wasn't pursuing it, and he also knew that the government was doing rather remarkable things to his credit and decided to impose no jail term and no period of supervised release. And he might have assumed that this had blown over. Five and a half years is a long time. And when people have an episode like this, they want to move on. No question about that, Your Honor. And I think it's very unlikely that this factual situation is going to recur. But the fact of the matter is that the clear teaching of Dolan is the analysis turns on the prejudice that the defendant might have suffered if the restitution amount imposed was unforeseeable. Under Pearson, even if there's a waiver, that waiver is entered against a background presumption of legality and presumably of regularity of proceedings. Yes. I mean, if you wanted to — if one wanted to make sure it never happened again, we could take care of that. That's correct, Your Honor. But I think that the analysis that this Court brought in order to take would follow this Court's clear holdings in the Riggi case, R-A-G-G-I-649F3rd, and in Yemitan, which is cited by my brother, where you look at the nature of the right that's affected by the delay. In this case, it's a statutory right, not a fundamental one, as Dolan says. And then the second question is whether the sentence was reached in a manner that was not anticipated in the plea agreement. And the manner is the amount of restitution here. And that amount was in the plea agreement. It was in the PSR. The PSR said the defendant's going to be held. No, we have — that's fundamentally what he is objecting to, is the amount. Yes. Well, I think he's objecting to the amount of joint and several. And it's clear, Your Honor, that the district court did not abuse its discretion in imposing joint and several liability on the defendant for the full amount of the victim's lawsuits. Thank you.  Thank you both.